IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ADRIN SMACK,            :
                               :
         Petitioner,      :
                               :
      v.                   :      Civil Action No. 19-691-GBW
                               :
THERESA DELBALSO,      :
Superintendent, SCI Mahanoy, and   :
ATTORNEY GENERAL OF THE    :
STATE OF DELAWARE,      :
                               :
         Respondents.     :

---

Christopher S. Koyste, Esquire, Wilmington, Delaware. Attorney for Petitioner.

Elizabeth M. McFarlan, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

## MEMORANDUM OPINION[1]

March 3d, 2023
Wilmington, Delaware

---

[1]This case was re-assigned to the undersigned's docket on September 7, 2022.

Williams, District Judge:

Presently pending before the Court is Petitioner Adrin Smack's counseled Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (D.I. 1; D.I. 33) The American Civil Liberties Union ("ACLU") and the Office of Defense Services for the State of Delaware ("ODS") filed Amicus Briefs in support of the Petition. (D.I. 35; D.I. 36) The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 43; D.I. 48) For the reasons discussed, the Court will deny the Petition.

## I.   BACKGROUND[2]

On or around August 2014, an FBI Task Force began investigating a drug trafficking organization known as the Sparrow Run Crew. (D.I. 30 at 104) Evidence obtained during the investigation indicated that this organization was responsible for distributing heroin and cocaine base to a wide network of distributors and sub-distributors. The heroin was distributed by Petitioner in quantities ranging from multiple bundles to multiple logs per transaction. Law enforcement believed that Petitioner and his co-defendant, Miktrell Spriggs, were co-leaders of the organization and that they pooled money to buy heroin and cocaine from sources of supply. The FBI Task Force's investigation included the

---

[2]The recitation of the factual background is taken verbatim from Petitioner's Opening Brief on direct appeal to the Delaware Supreme Court. (*See* D.I. 30 at 104-05)

use of confidential sources to conduct controlled purchases, as well as to enable law enforcement to monitor phone calls between Petitioner and these confidential sources. (*Id.*)

On April 10, 2015, a Superior Court order was issued authorizing law enforcement to intercept the wireless communications to and from Petitioner's cell phone. (D.I. 29 at 140-151; D.I. 30 at 104)  On April 18, 2015, a phone call between Petitioner and his co-defendant, Al-Ghaniyy Price, was intercepted. (D.I. 30 at 104-05)  During this call, Price informed Petitioner that he was hiding something behind a radiator in his (Price's) residence. (D.I. 30 at 105)  In response, Petitioner advised Price to make sure that no one saw him hide the object behind the radiator.  Later on that day, law enforcement intercepted a text message from Price to Petitioner advising that "Yo bro it's there." (D.I. 30 at 105)  A subsequent search of Price's residence revealed a military style tactical vest, $16,108, a loaded black Taurus .9-millimeter handgun, and 803 bundles of heroin. (*Id.*); *see also Smack v. State*, 172 A.3d 390 (Table), 2017 WL 4548146, at *1 (Del. Oct. 11, 2017).

In May 2015, a New Castle Grand Jury returned a 261-count indictment against multiple defendants, including Petitioner. (D.I. 29 at 19-105)

> [Petitioner] was charged with seventy-one counts of drug
> dealing, one count of possession of marijuana, one count
> of giving a firearm to a person prohibited, five counts of

> possession of a firearm by a person prohibited, and two counts of conspiracy second degree. [Petitioner] pleaded guilty to four counts of drug dealing, one count of possession of a firearm by a person prohibited, and one count of conspiracy second degree.

*Smack v. State,* 172 A. 3d 390 (Table), 2017 WL 4548146, at *1 (Del. Oct. 11, 2017)

At Petitioner's June 22, 2016 sentencing hearing, the prosecutor recounted facts underlying the charges in Petitioner's indictment, presented evidence to show that Petitioner was a mass distributor of drugs, and noted that Petitioner asserts he is not a "kingpin" in a drug dealing enterprise. (D.I. 29 at 116-17) Petitioner disagreed with the prosecutor's use of the term "kingpin," argued that he was a "retail" level drug dealer, contended that the sentencing court had to determine any disputed facts under the "preponderance of the evidence standard," and requested additional time to "present every bit of evidence" to dispute the "kingpin" characterization. (*Id.* at 120-22) The Superior Court continued Petitioner's sentencing to allow him to develop his arguments and to brief the issue of the applicable burden of proof for contested facts presented during the sentencing hearing. (*Id.* at 115-123) In his briefing and at oral argument, Petitioner asserted that the State must prove anything beyond the offenses of conviction – including his status as a drug "kingpin" – by a preponderance of the evidence and not, as the State argued, under the minimal indicia of reliability standard. (D.I. 29 at 125-129;

3

D.I. 30 at 40, 55-56, 63)  He also argued that the State should be required to

present testimony and that the defense should be permitted to call witnesses at the

sentencing hearing.  (D.I. 129 at 125-129)  The State filed a response in opposition

contending that Petitioner's requests for a "post-plea trial at sentencing" should be

denied pursuant to *Mayes v. State*, 604 A.2d 839 (Del. 1992) and Delaware

Superior Court Criminal Rule 32.  (D.I. 29 at 130-135)

On November 17, 2016, after considering the submitted briefings and oral

argument, the Superior Court denied Petitioner's request for an evidentiary hearing

under Delaware Superior Court Criminal Rule 32(a).  (D.I. 13-11 at 8-9)  The

Superior Court noted that Petitioner cited federal cases "for the proposition that he

has rights beyond those enumerated in Superior Court Rule 32," but found those

cases to be of "little value …because they turn on Federal Criminal Rule 32 which

is different from Delaware's rule."  (D.I. 13-11 at 9)  The Superior Court

determined "all that is required is that the court afford the defendant some

opportunity to rebut the Government's allegation," and the prosecution is "not

required to call witnesses to support its contention that the Defendant was heavily

involved in drug trade."  (D.I. 13-11 at 9)  Consequently, the Superior Court held

that petitioner "has no right, under Rule 32 or the Constitution, to a full-blown

evidentiary hearing."  (D.I. 13-11 at 9)

4

The Superior Court also held that it could consider evidence offered by the State at sentencing if it met the "minimum indicia of reliability" standard. (D.I. 13-11 at 10)  The Superior Court explained,

> the State may rely upon (in addition to the Presentence Investigation) the indictment and the affidavit submitted by the State in support of its application to obtain a warrant to intercept wire communications.  The court finds these bear the requisite indicia of reliability and may be relied upon by the State at sentencing.

(D.I. 13-11 at 10)

Petitioner's second sentencing hearing took place on November 23, 2017. (D.I. 30 at 74-84)  The Superior Court sentenced Petitioner to an aggregate of fourteen years of incarceration, followed by decreasing levels of supervision. *See Smack*, 2017 WL 4548146, at *1; (D.I. 30 at 85-92)

Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment on October 11, 2017. *See Smack*, 2017 WL 4548146, at *3. Petitioner filed a petition for writ of certiorari, arguing that "Delaware has inadvertently created a lower burden of proof for state courts when resolving disputed aggravated facts presented at a sentencing hearing contrary to what [the Supreme] Court has consistently indicated since 1986." (D.I. 13-14 at 7; D.I. 15-4 at 17)  The United States Supreme Court denied Petitioner's petition for writ of

certiorari on April 16, 2018. *See Smack v. Delaware*, 138 S.Ct. 1548 (Apr. 16, 2018).

## II.  GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.  Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable

6

application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolved the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application

7

standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

Petitioner's timely-filed Petition asserts the following two Claims: (1) the Superior Court violated Petitioner's due process rights during his sentencing hearing by considering unproven aggravated sentencing facts under an erroneous minimal indicia of reliability standard; and (2) the Superior Court violated Petitioner's due process rights by denying his request for an evidentiary hearing to challenge the State's presentation of contested aggravating factors during Petitioner's sentencing hearing. (D.I. 33 at 2) Petitioner presented these Claims to the Delaware Supreme Court on direct appeal of his sentencing. (D.I. 30 at 102-103) The Delaware Supreme Court rejected Petitioner's arguments as meritless. *See Smack*, 2017 WL 4548146, at \*1-2. Given these circumstances, Petitioner will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.[3]

---

[3]The Court notes that it has also considered the arguments presented in the Amicus Briefs when determining if Claims One and Two warrant habeas relief. (*See* D.I. 40; D.I. 41) The arguments in the Briefs mirror Petitioner's arguments and assert that the Delaware state courts erred by "equating the threshold standard of minimal indicia of reliability for admission of evidence that the Court could consider in making a factual determination with the actual evaluation of admitted evidence standard, which by federal constitutional mandate is proof by a preponderance of the evidence." (D.I. 40 at 8; *see also* D.I. 41 at 8-10)

## A. Claim One:  Due Process Violation During Sentencing

The Delaware Supreme Court provided the following explanation when

rejecting Petitioner's argument that the Superior Court violated his due process

rights by applying the minimal indicia of reliability standard during sentencing:

> [Petitioner] relies on a series of federal cases where the
> court applied a preponderance of the evidence standard to
> establish facts warranting a sentence enhancement under
> the federal sentencing guidelines. According to
> [Petitioner], the same burden of proof should apply to the
> State when it argued for a harsher sentence based on
> [Petitioner's] status as a drug kingpin. The federal cases,
> however, are inapposite. Under the federal sentencing
> guidelines, the judge must find facts at sentencing using
> evidentiary burdens because those factual determinations
> can cause an increase in the sentencing ranges under the
> guidelines. Here, [Petitioner's] guilty plea resulted in a
> sentencing range of two to seventy-six years. To fix the
> sentence within that statutory range, the judge was
> entitled to consider all facts that had a minimal indicia of
> reliability—including the intercepted text messages and
> phone conversations that led to the seventy-seven charges
> of drug dealing brought against [Petitioner]. The court
> could and did find from these facts that [Petitioner] was
> more than a street-level drug dealer.

*Smack*, 2017 WL 4548146, at *2.

Petitioner contends that the Delaware Supreme Court erroneously "failed to

consider controlling United States Supreme Court precedent interpreting the Due

Process Clause of the Fourteenth Amendment as requiring that disputed facts

presented during a sentencing hearing and considered by the sentencing judge be

9

proven by a preponderance of the evidence." (D.I. 33 at 10)  According to

Petitioner, it has been the "state of the law" "since the United States Supreme

Court issued its decision in *United States v. Watts*, 519 U.S. 148 (1997)," that "the

Due Process Clause of the Fourteenth Amendment requires disputed facts

presented during a sentencing hearing be proven by a preponderance of the

evidence if they are to be considered by the sentencing judge when determining a

defendant's sentence." (D.I. 33 at 20)  Petitioner cites the Supreme Court

decisions *McMillan v. Pennsylvania*, 477 U.S. 79 (1986),[4] and *Nichols v. United

States*, 511 U.S. 738 (1994) as additional support for his contention as to what

constitutes the "state of the law" – which presumably means "clearly established

federal law" – applicable to Claim One.  Petitioner is mistaken.

In *Watts*, the Supreme Court held that a federal sentencing court could

consider conduct for which a defendant was acquitted to enhance his sentence

under the United States Sentencing Guidelines ("USSG"), "so long as that conduct

has been proved by a preponderance of the evidence." *Watts*, 519 U.S. at 158.  In

*McMillan*, the Supreme Court held that a Pennsylvania statute allowing for a five-

---

[4]*McMillan* was overruled in *Alleyne v. United States*, 570 U.S. 99 (2013). *See
United States v. Haymond*, 139 S. Ct. 2369, 2378 (2019) ("Finding no basis in the
original understanding of the Fifth and Sixth Amendments for *McMillan* and
*Harris* [*v. United States*, 536 U.S. 545 (2002)], the [*Alleyne*] Court expressly
overruled those decisions...."). The *McMillan* holding that was overruled, however,
was the principle that factors implicating mandatory minimum sentences did not
require proof beyond a reasonable doubt.

year minimum statutory sentencing enhancement if the government proved by a preponderance of the evidence the fact that the defendant visibly possessed a firearm during the commission of a felony satisfied due process. *See McMillan*, 477 U.S. at 91. Similarly, in *Nichols*, the Supreme Court held that a federal sentencing court could consider a defendant's previous uncounseled misdemeanor conviction when applying a sentencing enhancement under the USSG if the underlying conduct was proven by a preponderance of the evidence. *See Nichols*, 511 U.S. at 746-47.

The common thread in each of these cases is the presence of a state statutory or federal sentencing guideline enhancement. Petitioner's case, however, did not involve a statutory sentencing enhancement provision, and the sentence imposed was within statutory limits. Consequently, even if the aforementioned cases could, or should, be viewed as articulating a general proposition that state sentencing courts must apply a preponderance of evidence standard when considering disputed facts that will alter a sentencing range, they do not constitute clearly established Supreme Court precedent mandating a preponderance of the evidence standard in a state sentencing proceeding where the sentence is within statutory limits and there is no statutory sentencing enhancement.

The Supreme Court has consistently held that "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a

11

specific legal rule that has not been squarely established by [it]." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2000). Therefore, the Delaware state courts' refusal to apply a preponderance of the evidence standard during Petitioner's sentencing, and its application of the of the minimal indicia of reliability standard, does not, on its own, warrant relief under § 2254(d).[5] *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006) (noting that a lack of Supreme Court holdings on a specific issue precludes finding that the state court decision on that issue was contrary to or unreasonable application of clearly established federal law).

Moreover, Claim One fails to warrant relief when it is considered in the context of the clearly established Supreme Court precedent governing the due process rights of defendants during sentencing. Sentencing courts have long "exercise[d] a wide discretion in the sources and types of evidence used to assist [them] in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams v. New York*, 337 U.S. 241, 246 (1949); *see Witte v. United States*, 515 U.S. 389, 399-401 (1995) (noting that the Due Process Clause

---

[5]To the extent Petitioner's true argument is that the Delaware state courts unreasonably refused to extend the preponderance of the evidence standard to Delaware sentencing proceedings, the argument does not warrant relief under § 2254(d). The Supreme Court "has never adopted the unreasonable-refusal-to-extend rule." *White v. Woodall*, 572 U.S. 415, 426 (2014). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [the Supreme] Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *Id.*

does not provide convicted defendants at sentencing the same constitutional protections afforded to defendants at a criminal trial). Nevertheless, a sentencing court violates a defendant's right to due process if it bases a defendant's sentence on information that is materially false and if the defendant was not given notice and an opportunity to contest the facts upon which the sentencing court relied in imposing the sentence. *See United States v. Tucker*, 404 U.S. 443, 447 (1972) (finding a due process violation when the "sentence [was] founded at least in part upon misinformation of constitutional magnitude."); *Townsend v. Burke*, 334 U.S. 736, 741 (1948) (finding that the sentencing proceedings violated due process due to "the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide."). In order to prevail on a claim that a sentence was based on materially false information or on a material misapprehension of fact, a defendant must demonstrate that the information before the sentencing court was materially false and that the court relied on the false information when imposing the sentence. *See Tucker*, 404 U.S. at 447.

Petitioner has made no such showing. At the original sentencing hearing on June 22, 2016, the prosecutor and defense counsel disagreed over the characterization of Petitioner as a drug kingpin. (D.I. 29 at 116-17, 120-21) Defense counsel contended that Petitioner was a "retail" level drug dealer and

13

requested an evidentiary hearing to dispute the kingpin characterization. (D.I. 29 at 120-21) The Superior Court continued the sentencing to allow defense counsel to develop his claim that Petitioner was entitled to an evidentiary hearing and to brief what he believed to be the proper standard of proof. (D.I. 29 at 115-23) The parties submitted briefing, and the Superior Court held oral argument on November 9, 2016. During oral argument, the State informed defense counsel that, at sentencing, it intended to rely on each count of drug dealing in the indictment which specifically named Petitioner as the defendant. (D.I. 13-5 at 85) After oral argument – in a letter dated November 11, 2016 – the State informed the Superior Court and defense counsel that it was not going to ask the court to consider the drugs recovered from co-defendant Price's home during sentencing. (D.I. 13-5 at 89) In a letter dated November 18, 2016, defense counsel informed the Superior Court and the State that he "does not contest the Court's consideration at sentencing, under the minimum indicium of reliability burden of proof, any of the indicted counts that [Petitioner] was not convicted of, with exception to Counts 248-253, and Count 258." (D.I. 13-5 at 90) Defense counsel included his reasons for contesting the aforementioned seven counts being used as aggravating factors for determining Petitioner's sentence. (D.I. 13-5 at 91)

Based on the foregoing, the Court concludes that the disputed facts *at the beginning of the second sentencing hearing* were: (1) whether Petitioner was a

14

drug kingpin or was only involved in drug dealing to support his family (D.I. 33 at

17); and (2) Counts 248-253, and Count 258.  During the second sentencing

hearing, defense counsel argued that Petitioner was not a drug kingpin, but rather,

a retail drug entrepreneur.  (D.I. 13-5 at 94-97)  Both Parties referred to the

seventy-seven counts of drug dealing as supporting their respective arguments.

For instance, the State argued that, "if you can gather sufficient evidence to charge

77 counts of drug dealing in two months of intercepted phone calls, that would

suggest that that is certainly a full-time job." (D.I. 13-5 at 96-97)  When asked by

the Court to summarize the aggravating circumstances the State intended to rely

upon, the prosecutor responded, "[Petitioner's] prior violent criminal conduct,

which is the violent offense of robbery and the handgun [… which] were

committed when he was 17." (D.I. 13-5 at 97)  In response, defense counsel

argued that "we don't have a definition of what kingpin is. […]  First, 77 drug

deals that are recorded within a two-month time-period, Your Honor, that is

relatively – first off, it's indicative of retail sales, which is how he was indicted.

[…] That's, actually, a small amount of deals." (D.I. 13-5 at 98)  At this point in

the hearing, Petitioner was given the opportunity to address the court.  The

Superior Court asked Petitioner why he had a firearm.  Petitioner responded, "on

the streets you have people trying to rob you, kill you.  So, basically, it's for

protection." (D.I. 13-5 at 100)  The Superior Court provided defense counsel an

15

opportunity to make additional comments.  Defense counsel engaged in the

following discourse.

> Defense Counsel: [W]hen this case was approached, [Petitioner] was labeled a kingpin early on in the investigation before there was any opportunity to tabulate and gather information.
>
> Indicted counts, Your Honor, don't necessarily indicate what level of criminal activity individuals have.
>
> Court: Well, we have had this discussion, and I have written in the opinion to you guys that there is a sufficient indicia of reliability to an indictment for me to at least, consider the indicted counts.  I am not going to punish him for that, I can't do that, but I can consider it; don't you agree?
>
> Defense Counsel: Under the standards that Your Honor has expressed [*i.e.*, minimal indicia of reliability], I agree that you could.

(D.I. 13-5 at 100)

Given Petitioner's concession at the end of the second sentencing hearing

that the Superior Court could consider all the counts of the indictment under the

minimal indicia of reliability standard,[6] the Court cannot conclude that Petitioner's

---

[6]In his Opening Brief in this proceeding, Petitioner contends that the Superior Court's reference to "the indicted counts" meant "all of the indicted counts, including the 74 non-conviction counts."  (D.I. 33 at 31)  Consequently,

16

sentence was based on any "disputed" facts. Nevertheless, even if those facts were

still disputed at the end of the hearing, Petitioner has not shown that the

information before the Superior Court – including the information supporting the

counts of the indictment – was materially false or inaccurate, or that the Superior

Court relied on any materially false or inaccurate information when imposing his

sentence. A trial court's alleged error in resolving a disputed factual question at

sentencing does not constitute reliance on materially false information. *See*

*Townsend*, 334 U.S. at 741 ("Nor do we mean that mere error in resolving a

question of fact...would necessarily indicate a want of due process of law. Fair

prosecutors and conscientious judges sometimes are misinformed or draw

---

Petitioner's response to the Superior Court's statement during sentencing – that he
agreed the court could consider the indicted counts – indicates Petitioner's
agreement that, under the minimal indicia of reliability standard, the Superior
Court could consider all the counts of the indictment. In other words, despite
Petitioner's contention to the contrary – made retrospectively in his Opening Brief
in this proceeding – that his November 18, 2016 letter shows he still contested the
sentencing court's reliance on Counts 248-253 and Count 258 under the minimal
indicia of reliability standard (D.I. 33 at 32 n.137), the Court views defense
counsel's statement at the *end* of the second sentencing hearing on November 23,
2016 as demonstrating that he no longer contested the Counts identified in his
November 18, 2016 letter. The Court believes this is a reasonable factual
determination given the tenacious manner with which Petitioner articulated his
arguments during the second sentencing hearing. More specifically, if, at the end
of the second sentencing hearing, Petitioner still believed that the Superior Court
could not consider Counts 248-253 and Count 258 when determining his sentence
– even if determined under the minimal indicia of reliability standard –  it is
reasonable to conclude that defense counsel would have articulated that opinion.

17

inference from conflicting evidence with which we would not agree. But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law."); *Tucker*, 404 U.S. at 447 (distinguishing "a sentence imposed in the informed discretion of a trial judge" from a "sentence founded at least in part upon misinformation of constitutional magnitude.").

Additionally, sentencing courts are granted wide latitude when imposing sentences within the statutory limits. *See Apprendi v. New Jersey,* 530 U.S. 466, 48, 490 (2000) ("we should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion ... in imposing a judgment within the range prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case") (emphasis in original). The prosecutor in this case was arguing in support of a sentence that was within the statutory sentencing limits of two to seventy-six years, not an increase of the sentencing range. *See Smack*, 2017 WL 4548146, at *2. The Superior Court did not use statutory or guideline-based enhancements when it sentenced Petitioner to fourteen years of incarceration which was well within the sentencing range of two to seventy-six years.

Given these circumstances, the Court concludes that the Delaware Supreme Court did not unreasonably apply *Tucker* and *Townsend* when denying Claim One.

18

Accordingly, the Court will deny Claim One for failing to satisfy the standards of §
2254(d).

## B. Claim Two:  Due Process Violate By Denying Evidentiary Hearing

In Claim Two of his Opening Brief, Petitioner contends that the Delaware
state courts violated his due process rights by denying his request for an
evidentiary hearing regarding disputed facts presented during his sentencing to
ensure that the State satisfied the preponderance of the evidence standard.  (D.I. 33
at 10)  Petitioner also asserts that "this Court must overturn [Petitioner's]
conviction and remand this matter to the Delaware Superior Court for a new
sentencing hearing with instructions that [Petitioner] be permitted to present
testimony and other evidence to rebut the State's presentation of contested
aggravating facts."  (D.I. 33 at 46)  Yet, in his Response to the State's Answer,
Petitioner states that, "[a]s described … in his Opening Brief, [he] asserts that the
state court record clearly establish[es] the constitutional error in the Delaware
Supreme Court's adherence to the 'minimal indicia of reliability' burden of proof
during Delaware sentencing hearings.  As such, [he] asserts that an evidentiary
hearing is warranted *only in the event* that this Court finds that the record is
inadequate to grant [Petitioner's] habeas claim."  (D.I. 48 at 22) (emphasis added)
Although not entirely clear, Petitioner's Response appears to assert a new

argument that this Court should conduct an evidentiary hearing in this proceeding, in addition to his original argument that the case should be returned to the Superior Court for that court to conduct an evidentiary hearing, if the Court concludes that the Superior Court should have applied a preponderance of the evidence standard and it finds that the record is insufficient to determine whether that standard was satisfied. Before considering these two variations of Claim Two, the Court provides the following summary of the portions of the history in this case it views as most relevant to its consideration of Claim Two.

During the oral argument that occurred between the initial and second sentencing hearings, defense counsel argued that Delaware Superior Court Rule of Criminal Procedure 32 was sufficiently similar to Federal Rule of Criminal Procedure 32 such that the Superior Court was required to hold an evidentiary hearing allowing him "to rebut whatever information is contained in the documents [the Superior Court] would consider [during sentencing]." (D.I. 13-5 at 77-80) More specifically, defense counsel argued:

> So the Federal rules are dealing with the – how to go about resolving. It is at the Court's discretion how to present evidence whether we would – whether, under fairness, we should be able to cross-examine individuals making assertions about [Petitioner's] conduct and that's something Your Honor would have to rule upon.
>
> But I think the best way to do that is to first have the State – and normally it would be done in the presentence

> report – but the State make their arguments, indicate
> what supports it and then I would have an opportunity to
> respond and indicate whether cross-examination is
> needed in order to be able to adequately respond to it.

(D.I. 13-5 at 80)  After further argument, defense counsel stated he was disputing

"criminal conduct beyond the offense of conviction."  (D.I. 13-5 at 84)

The Superior Court responded:

> All right.  Here's what I'm going to do – let me hear
> from the State.  And I understand your position and I am
> going to require the State to advise you in writing of the
> documents it intends to rely upon at sentencing.

> \*                        \*                        \*

> Okay.  Let me hear from the State.  And, specifically,
> what – I'm interested in two things:  What should you
> provide in terms of information to the defendant in
> advance of the sentencing; and, two, what opportunity, if
> any, does the defendant have to contest that information?

(D.I. 13-5 at 81)  The State responded:

> Well, Your Honor, as the State has already said, both in
> writing and today, the State is not at all clear on exactly
> what facts the defense wishes to contest at sentencing.
> And the reason the State says that is because the State
> actually – Your Honor may recall – in June went through
> its entire sentencing procedure and argument.

> In addition to that, there was the presentence
> investigation that not only references the very same
> things that the State referenced at sentencing meaning the
> drugs, the money, the guns that were all found in Mr.
> Price's home, so it's the State's position that all of that
> was made known to the defendant prior to the June

21

hearing. There was no assertion when we began that hearing in June that there were any issues specifically with factual assertions that were made during the State's sentencing presentation. And so the State is in a position where it's being asked to provide documentary proof to everything that it said without any real indication of, well, we're conceding that, yes, in fact, the State provided the DNA report and that the DNA report did say that.

*               *               *

The State's saying that each count of drug dealing for which [Petitioner] is specifically named as the defendant is supported by probable cause. The grand jury returned the indictment – […] and that's the State's reliance.

(D.I. 13-5 at 82, 85) After oral argument, the State informed Petitioner and the

Superior Court that it "will not ask the Court to consider [the drugs found in

Price's home]." (D.I. 13-5 at 89) In response, defense counsel informed the

Superior Court that he "does not contest the Court's consideration at sentencing,

under the minimum indicia of reliability burden of proof, any of the indicted

counts [Petitioner] was not convicted of, with exception to" Counts 248-253, and

Count 258. (D.I. 13-5 at 90)

### 1. Claim Two as originally presented: Did the Delaware state courts violate due process by refusing to hold an evidentiary hearing

As an initial matter, the Court notes that Petitioner does not identify any

Supreme Court precedent requiring a state court to hold an evidentiary hearing in

circumstances similar to his. Instead, Petitioner crafts his argument by analogizing

Federal Rule of Criminal Procedure 32 to Delaware Superior Court Rule of

Criminal Procedure 32(c) and relying on Third Circuit cases applying Federal Rule

of Criminal Procedure 32. (D.I. 33 at 38-44) While the Court views the absence

of any Supreme Court precedent requiring an evidentiary hearing as providing a

sufficient basis to deny Claim Two, it also concludes that Claim Two does not

warrant relief even it were to consider Federal Rule of Criminal Procedure 32 as

providing guidance in this situation.

Under Federal Rule of Criminal Procedure 32(i) (former Rule 32(c)(3)(D)),

"[s]entencing judges are not [...] required to make findings regarding alleged

inaccuracies in PSIs or determinations that the alleged inaccuracies will not be

relied on, where a defendant fails to controvert the accuracy of the PSI. " *United

States v. Vancol*, 778 F. Supp. 219, 225 (D. Del. 1991). In Petitioner's case, at the

end of the second sentencing hearing, defense counsel agreed that the Superior

Court could consider all the counts in the indictment under the minimal indicia of

reliability standard – including the seven Counts Petitioner had originally contested

at the start of the second sentencing hearing – which is what the Superior Court

did. Given defense counsel's apparent change of mind and concession that there

were no disputed facts under the minimal indicia of reliability standard, the Court

concludes that the Superior Court did not violate due process – or Petitioner's

23

interpretation of Federal Rule 32's parameters – by refusing to hold a separate evidentiary hearing.

Even if defense counsel's statement at the end of the second sentencing hearing did not constitute a withdrawal of his original disputed facts, the Superior Court's refusal to conduct an evidentiary hearing did not violate Petitioner's due process rights. "[Federal Rule of Criminal Procedure] 32 does not make an evidentiary hearing mandatory; it only requires the District Court to either make a finding as to the disputed facts or expressly disclaim use of the disputed facts in sentencing." *United States v. Bigica*, 543 F. Appx 239, 244 (3d Cir. 2013) (citing *United States v. Furst*, 918 F.2d 400, 408 (3d Cir. 1990)). The Superior Court complied with that rule. During oral argument, Petitioner stated he was disputing "criminal conduct beyond the offense of conviction," because he was unsure if the "77 sales [were] from [Petitioner]." (D.I. 13-5 at 84-85) The State responded it was relying on "each count of drug dealing" specifically naming Petitioner. (D.I. 13-5 at 85) Defense counsel stated he needed additional time to "go through the indictment" because, although he expected "the vast majority of any of the drug deals, which are small drug deals that are outlined within the indictment, is something that [Petitioner] would take responsibility for," he needed more time to determine which "additional counts that [Petitioner] did not plead to within the indictment" involved the "conduct beyond conviction" defense counsel was

24

disputing. (D.I. 13-5 at 86) The Superior Court provided defense counsel extra time to identify the disputed uncharged counts, and defense counsel identified Counts 248 -253 and Count 258 as the disputed facts prior to the second sentencing hearing. (D.I. 13-5 at 90-91) During the second sentencing hearing defense counsel argued, as he did in the initial sentencing hearing, that Petitioner was a retail drug dealer, not a drug kingpin. (D.I. 30 at 76-77, 80) Both the prosecutor and defense counsel described Petitioner's criminal activity as the sale of heroin to individual addicts. (D.I. 30 at 76-79)

As explained by the Delaware Supreme Court on direct appeal, during the second sentencing hearing, Petitioner "had, and took, the opportunity to argue he was a middleman in the conspiracy and not the kingpin." *Smack*, 2017 WL 4548146, at *2. At the end of the second sentencing hearing, after extensive argument by both Parties, the Superior Court explicitly stated that it was considering the indicted counts, and defense counsel agreed that the court could do so under the minimal indicia of reliability standard. (D.I. 13-5) The Superior Court then stated:

> Crafting sentencing is always difficult.
>
> I fully understand [Petitioner's] contentions essentially that, through no fault of his own, [he] lives in an environment where he has really no means of supporting himself other than illegal conduct.

25

I can understand that.

I can understand that [Petitioner] did not choose to be born into the live in which he has lived.

But on the other side of the coin is, I think of all of the victims of his crime.   And not only the people who purchased the drugs which he sells, but also their loved ones and families.

I think about all of the lives that he has destroyed.

I think about the fact that he has willingly destroyed them because it provides him with money.

And I believe that, in addition to the value of punishment, there is also here a need to try to defer others from doing this.   And, also frankly, I need to remove individuals from society who are going to prey upon those who are weak and addicted to drugs.

I have to balance those.

The General Assembly has, in the large part, done that balancing for me by specifying the realm of the sentences to be imposed.

(D.I. 13-5 at 100-101)

In short, the record reveals that the Superior Court considered Petitioner's

"contested facts and decided not to draw the inferences he wished from those facts.

Simply put, [Petitioner] characterized the facts […]  differently, and […], after

giving time for argument, found [Petitioner's] characterization unworthy of

credence." *Bigica*, 543 F. App'x at 244.  Accordingly, the Court concludes that the

Delaware state courts did not violate Petitioner's due process rights by refusing to conduct an evidentiary hearing during his sentencing proceeding.

### 2. Claim Two's new request for an evidentiary hearing in this proceeding

Notably, Petitioner does not challenge the Delaware state courts' determination that the facts relied upon at sentencing satisfied the minimal indicia of reliability standard. Instead, Petitioner's request for an evidentiary hearing in this proceeding appears to be dependent on the sought-after holding from this Court that the Superior Court should have applied the preponderance of the evidence standard during his second sentencing hearing. Given the Court's conclusion that the Delaware state courts did not violate Petitioner's due process by applying the minimal indicia of reliability standard during his second sentencing hearing, the Court finds that Petitioner has not presented a reason for conducting an evidentiary hearing in this proceeding. Accordingly, the Court will deny Claim Two to the extent it asks this Court to hold an evidentiary hearing in this proceeding.

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when

a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V.     CONCLUSION

For the reasons discussed, the Court concludes that the instant Petition must be denied without an evidentiary or the issuance of a certificate of appealablity. An appropriate Order will be entered.

28